# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROLAND MCINTOSH, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 17 C 3273 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| UBER TECHNOLOGIES, INC., | ) ) |
| Defendant. | ) |

## OPINION AND ORDER

After Defendant Uber Technologies, Inc. ("Uber") terminated its relationship with Plaintiff Roland McIntosh, McIntosh filed this suit against Uber, alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* Uber has moved to compel arbitration and dismiss the action. Because the parties agreed to an arbitration provision that delegates questions of arbitrability to the arbitrator, the Court compels arbitration and stays this case pending the outcome of arbitration.

## BACKGROUND

Uber provides a smartphone application (the "Uber app") that connects riders looking for transportation services with drivers. McIntosh signed up as an Uber driver in December 2015. In order to use the Uber app to obtain leads for potential riders, McIntosh had to enter into an agreement with Rasier, LLC ("Rasier"), an Uber-owned subsidiary. Specifically, when he opened the Uber app for the first time, McIntosh saw a screen with a link to the agreement and had to accept the agreement's terms in order to actively use the Uber app. McIntosh could

review the agreement by clicking on a hyperlink on the screen and, after clicking the "YES, I AGREE" button, he was prompted to confirm his acceptance a second time. Rasier placed the agreement in McIntosh's personal driver portal.

McIntosh activated his Uber account on December 4, 2015. At that time, the applicable agreement was the November 10, 2014 Rasier Software License & Online Services Agreement (the "November 2014 Agreement"). McIntosh accepted the November 2014 Agreement on December 5, 2015. Approximately a week later, Uber introduced a revised agreement, the December 11, 2015 Technology Services Agreement (the "December 2015 Agreement"), which McIntosh had to accept in order to further use the Uber app. McIntosh received an email notifying him of the new agreement and the arbitration provision contained therein. Uber's records indicate that McIntosh accepted the December 2015 Agreement on December 11, 2015, using the same process described above, although McIntosh states that he does not recall either agreement.

The December 2015 Agreement includes the following arbitration provision, in relevant part:

> This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving interstate commerce. This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates. . . .
>
> Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before any forum other than arbitration, with the exception of proceedings that must be exhausted under applicable law before pursuing a claim in a court of law or in any forum other than arbitration. Except as it otherwise provides, this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of

> court or jury trial, or by way of class, collective, or representative action.
>
> Except as provided in Section 15.3(v), below, regarding the Class Action Waiver, such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge. . . .
>
> Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to all disputes between You and . . . Uber . . . including but not limited to any disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with [Uber], including termination of the relationship. This Arbitration Provision also applies, without limitation, to claims arising under the . . . Americans With Disabilities Act, Age Discrimination in Employment Act, . . . and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims.

Doc. 18-1 at 52, December 2015 Agreement § 15.3(i). McIntosh had the right to opt out of the arbitration provision:

> Your Right To Opt Out Of Arbitration.
>
> Arbitration is not a mandatory condition of your contractual relationship with [Uber]. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying [Uber] in writing of your desire to opt out of this Arbitration Provision . . . .
>
> . . . Should you not opt out of this Arbitration Provision within the 30-day period, you and [Uber] shall be bound by the terms of this Arbitration Provision. You have the right to consult with counsel of your choice concerning this Arbitration Provision. You understand that you will not be subject to retaliation if you exercise your right to assert claims or opt-out of coverage under this Arbitration Provision.

Doc. 18-1 at 56, December 2015 Agreement § 15.3(viii).

McIntosh did not opt out of either the November 2014 Agreement or the December 2015 Agreement. McIntosh alleges that Uber deactivated his account on December 17, 2015, precipitating this lawsuit. He states that although he clicked through various screens to complete the download of the Uber app and activate his account, he did not know that the November 2014 Agreement or the December 2015 Agreement contained an arbitration provision or provided the opportunity to opt out of that provision.

## LEGAL STANDARD

Congress passed the FAA to codify the federal policy favoring the resolution of disputes through arbitration. *Kawasaki Heavy Indus. v. Bombardier Recreational Prods.*, 660 F.3d 988, 994 (7th Cir. 2011). Section 3 of the FAA requires courts to stay a proceeding and to compel the arbitration of any matter covered by a valid arbitration agreement. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 131 S. Ct. 1740, 179 L. E. 2d 742 (2011). A federal court may compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the agreement, and (3) a refusal to arbitrate by one of the parties to the agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Agreements mandating arbitration are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Contract defenses, such as fraud, duress, or unconscionability, apply to agreements to arbitrate. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010). The party seeking to avoid arbitration bears the burden of establishing why the arbitration agreement should not be enforced. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).

**ANALYSIS**

Uber moves to compel arbitration of McIntosh's claims. McIntosh opposes arbitration, however, contending that Uber has not sufficiently shown that McIntosh assented to the November 2014 Agreement or the December 2015 Agreement and, to the extent that he did, the Court should not enforce the arbitration provision because he did not receive thirty days to opt out of arbitration and the arbitration provision is unconscionable.

**I.     McIntosh's Assent to the Arbitration Provisions**

McIntosh first argues that he cannot be compelled to arbitration because Uber has not shown that he accepted either of the agreements at issue. Although the arbitration provision includes a delegation clause, which typically means that the validity of the arbitration provision should be decided by the arbitrator and not the Court, *see Rent-A-Center*, 561 U.S. at 68–70, because McIntosh's argument goes to the issue of whether a contract was formed at all, the Court must decide that issue first, *see Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010) ("[T]he court must decide whether a contract exists before it decides whether to stay an action and order arbitration."); *Mohammed v. Uber Techs., Inc.*, 237 F. Supp. 3d 719, 726–28 (N.D. Ill. 2017) (reviewing impact of delegation clause on Court's ability to determine whether contract was formed and concluding that the Court, and not the arbitrator, makes that determination).

McIntosh's challenge to contract formation does not have merit, however. Although he may not have read (or even opened) the agreements at issue, he acknowledges that he clicked through various screens to complete the download of the Uber app and proceed to obtain leads for rides. McIntosh does not dispute Uber's evidence that the screens he clicked through provided that he agreed to the terms of the November 2014 Agreement and the December 2015

5

Agreement. This is sufficient to find that he accepted these agreements, even notwithstanding the fact that he did not read them. *See Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035–36 (7th Cir. 2016) ("Illinois contract law requires that a website provide a user reasonable notice that his use of the site or click on a button constitutes assent to an agreement," with one way of providing such notice being placing hyperlinks to the agreement next to an "I Accept" button "that unambiguously pertains to that agreement" and indicates that by clicking on it, the individual is subject to those terms); *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1292 (7th Cir. 1989) ("[B]asic contract law establishes a duty to read the contract; it is no defense to say, 'I did not read what I was signing.'"); *see also Carey v. Uber Techs., Inc.*, No. 1:16-cv-1058, 2017 WL 1133936, at *4 (N.D. Ohio Mar. 27, 2017) (clicking through relevant screens so as to sign up to use the Uber app sufficient to manifest assent to terms of agreement); *Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 47–51 (E.D.N.Y. 2017) (plaintiffs assented to service agreements by clicking through Uber app screens that signaled they were agreeing to a contract). Uber's records also show that McIntosh accepted these agreements and McIntosh provides nothing more than his own speculation to call into question whether the Uber driver identification number corresponds to him. *See Winters v. AT&T Mobility Servs., LLC*, No. 4:17-cv-04053-SLD-JEH, 2017 WL 2936800, at * 4 (C.D. Ill. July 10, 2017) (plaintiff's affidavit that she did not recall ever receiving notice of an arbitration agreement not sufficient to call into question acceptance of that agreement in the face of defendant's evidence showing records of access and acceptance); *cf. Mohammed*, 237 F. Supp. 3d at 729 (plaintiff's version of facts raised issues of whether he personally accepted the agreement, requiring trial related to formation of arbitration agreement). Therefore, the Court finds that McIntosh accepted both the November 2014 Agreement and the December 2015 Agreement.

## II. Enforceability of the Arbitration Provision

Next, the Court must address the enforceability of the arbitration provision.[1] Normally, this question is reserved for the Court, but "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68–69. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) (alteration in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)).

Here, Uber's delegation clause clearly and unmistakably indicates an agreement to arbitrate the threshold issues of arbitrability. The arbitration provision states that it applies to, among other things, "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision." Doc. 18-1 at 52, December 2015 Agreement § 15.3(i). This means that the arbitrator, and not the Court, must determine any threshold issues concerning arbitrability unless the delegation provision itself is unenforceable. *See Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 891–92 (N.D. Ill. 2016) (collecting cases).

But instead of challenging the enforceability of the delegation provision, McIntosh mounts a broader challenge to the arbitration provision itself, claiming it is both procedurally and

---

[1] McIntosh notes in response that it is unclear whether Uber seeks to enforce the arbitration provision in the November 2014 Agreement or the December 2015 Agreement. In reply, Uber clarifies that the arbitration provision from the December 2015 Agreement controls. The Court agrees that the December 2015 Agreement controls. The November 2014 Agreement provides that Uber can modify the terms at any time and that McIntosh is bound by such future amendments, *see* Doc. 18-1 at 25–26, November 2014 Agreement § 14.1, and the December 2015 Agreement includes an integration clause indicating that it replaces all prior agreements between the parties regarding the subject matter, *id.* at 49, December 2015 Agreement § 14.5; *see also Peng*, 237 F. Supp. 3d at 51 (finding that December 2015 Agreement applied to dispute, noting that arbitration clauses without an express limitation apply to preexisting claims).

substantively unconscionable. Because McIntosh does not challenge the delegation provision specifically, the Court must treat it as valid and enforce it pursuant to § 2 of the FAA, leaving McIntosh's unconscionability arguments for the arbitrator.[2] *See Rent-A-Center*, 561 U.S. at 72; *Suarez v. Uber Techs., Inc.*, No. 8:16-cv-166-T-30MAP, 2016 WL 2348706, at *4 (M.D. Fla. May 4, 2016) (finding that because plaintiffs did not directly challenge the validity of the delegation provision, the motion to compel should be granted and any attacks on the arbitration provision should be left for the arbitrator).

Therefore, the Court finds that the parties entered into a valid agreement to delegate to an arbitrator the questions of arbitrability, meaning the Court cannot address McIntosh's arguments concerning the unconscionability of the arbitration provision as a whole. The Court grants Uber's motion to compel arbitration. But the Court will not dismiss this case, instead staying the proceedings pending the outcome of arbitration. *See Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." (quoting *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005))).

---

[2] McIntosh's unconscionability arguments rely on arguments made in *O'Connor v. Uber Technologies, Inc.*, No. 13-cv-03826-EMC, Docs. 400, 435 (N.D. Cal.), in which the district court found Uber's arbitration agreement unconscionable under California law, relying substantially on its previous decision in a related case, *Mohamed v. Uber Technologies, Inc.*, 109 F. Supp. 3d 1185 (N.D. Cal. 2015), *aff'd in part & rev'd in part*, 848 F. 3d 1201 (9th Cir. 2016). But the Ninth Circuit rejected the district court's reasoning that the delegation provisions were procedurally unconscionable and ordered arbitration. *See Mohamed*, 848 F.3d at 1211. Therefore, even were the Court to consider McIntosh's arguments on this point, the Court would not find them persuasive, particularly in light of the fact that McIntosh had the right to opt out of the arbitration provision without adverse consequence, a right that was unaffected by the deactivation of McIntosh's Uber account. *See Lee*, 208 F. Supp. 3d at 892–93 (rejecting arguments similar to those made by McIntosh as rejected by the Ninth Circuit in *Mohamed* but refusing to rule on unconscionability arguments in light of delegation provision).

## CONCLUSION

For the foregoing reasons, the Court grants Uber's motion to compel [17] in part and denies it in part. The parties are ordered to initiate arbitration within twenty-one days. This matter is stayed pending the resolution of the arbitration proceeding.

Dated: January 24, 2018

_____
SARA L. ELLIS
United States District Judge